**Derrick E. SPILLER, 467 53 8168, Engineman Second Class (E–5) U.S. Navy, Petitioner,**

**v.**

**William T. VEST, Jr., Captain, U.S. Navy, Military Judge, Respondent.**

**NMCM No. 903475 M.**

U.S. Navy–Marine Corps Court of Military Review.

14 Dec. 1990.

LCDR J. Richard Chema, JAGC, USN, Appellate Government Counsel.

Maj R.T. McNeil, USMC, Appellate Defense Counsel.

Before WILLEVER, Chief Judge, STRICKLAND, Senior Judge, and ORR, J.

## PER CURIAM:

The petitioner seeks writs of mandamus directing the respondent military judge to stay all proceedings against the petitioner in the case of *United States v. Spiller* and to dismiss all charges and specifications against the petitioner for lack of *in personam* jurisdiction. Since the military judge granted the petitioner's motion to abate the proceedings pending the decision of this Court, the request to stay all proceedings is essentially moot.

As to the jurisdictional question, the military judge denied the petitioner's motion to dismiss for lack of personal jurisdiction and filed essential findings, as well as a detailed discussion of his analysis of the law as it applied to his findings. Record, Appellate Exhibit X. In two specifications the petitioner is charged with conspiring with his wife, a Torpedoman's Mate Third Class, to make a false writing in connection with a claim for an overseas housing allowance and to attempt to desert his unit, both in violation of Article 81, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 881. The petitioner is also charged with one specification of attempting to desert, in vio-

lation of Article 85, UCMJ, 10 U.S.C. § 885, and one specification of making a false writing in connection with a claim, in violation of Article 132, UCMJ, 10 U.S.C. § 932.[1]

From the evidence provided to us, the petitioner was the subject of a Naval Investigative Service (NIS) investigation that began in May 1990 concerning the possible submission of a false writing in February 1989 in connection with an overseas housing allowance claim. Petitioner was serving an extension of his original four-year active duty obligation, and that extension was due to expire on 6 September 1990. On that date, the petitioner was to be discharged to the U.S. Naval Reserve for the remainder of what was originally an eight-year service obligation. In connection with his separation from active duty, the petitioner requested and was granted separation leave commencing at 1600, 2 September 1990, until 0800, 6 September 1990. The 2nd of September was a Sunday, and the 3rd was Labor Day. In addition, the petitioner was granted 48 hours of special liberty beginning on Wednesday, 29 August 1990, to spend in San Juan, Puerto Rico, with his wife. The petitioner was assigned to the Security Detachment, U.S. Naval Station, Roosevelt Roads, Puerto Rico, throughout this period.

The petitioner completed his command's administrative check-out process on 27 August 1990, a condition required by his work supervisor before the petitioner was authorized special liberty. On 29 August 1990, the petitioner turned in the completed check-out sheet to the Personnel Support Detachment (PSD) Roosevelt Roads and was handed a properly executed Certificate of Release or Discharge from Active Duty (DD Form 214), with a separation date entered on the form of 6 September 1990, by a person duly authorized to issue such certificates. Department of the Navy direction concerning the delivery of a DD Form 214, however, specifies:

---

1. Our decision concerning this petition and the discussion of the factual predicate necessary for that decision should not be considered as determining any other questions of fact raised by the offense charged in this case and to be resolved by the appropriate finder of fact in the court below.

For those members whose separation will become effective while on separation leave ..., the DD Form 214 will be prepared prior to the member's departure on leave. The member must provide a mailing address ... [on the form] and sign the form. The authorizing official shall not sign or distribute the form until the actual date of separation. The original ... will be mailed on the date of separation.

Naval Military Personnel Command Instruction 1900.1B of 11 Sep 86, enclosure (1), para. 1c(3).

The petitioner obtained airline tickets to leave Puerto Rico on Friday, 31 August 1990, after his 48 hours of special liberty had expired. At some time between 29 August and 31 August, the NIS agent investigating the false writing allegation contacted the PSD office about the petitioner's status. As a result of that inquiry, the petitioner was apprehended at the San Juan National Airport by Naval Station security personnel, returned to Naval Station Roosevelt Roads, and informed that he was being involuntarily extended beyond his scheduled separation date pending possible court-martial proceedings. The petitioner has not consented to this extension.

In an affidavit submitted by appellate government counsel, the Disbursing Officer at PSD Roosevelt Roads states that he is responsible for signing paychecks and disbursing pay to military personnel at the Naval Station and that the petitioner was not and has not been issued his final pay up to his end of active obligated service date. This affidavit was accepted for filing with the record of trial by a separate order of this Court.

The petitioner relies on the discussion following Rule for Courts–Martial (R.C.M.) 202(a), which states, in part: "Court-martial jurisdiction over active duty personnel ordinarily ends on delivery of a discharge certificate or its equivalent to the person concerned issued pursuant to competent orders." Discussion, R.C.M. 202(a), para. (2). Subsequently, it is stated: "As indicated above, the delivery of a valid discharge certificate or its equivalent ordinarily serves to terminate court-martial jurisdiction." Discussion, R.C.M. 202(a), para. (2)(B). The answer to the question before us, however, does not end with that discussion. As pointed out in the drafter's analysis of the Rules: "The discussion under this subsection [referring to R.C.M. 202(a)] briefly describes *some* of the more important requirements for court-martial jurisdiction over persons." Analysis, Manual for Courts–Martial, United States, 1984, (MCM), Appendix 21, Rule 202 (emphasis added).

Two statutory enactments also address the discharge of active duty servicemembers. Congress has stated:

A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.

10 U.S.C. § 1168(a). In the following section of title 10, Congress also stated: "No regular enlisted member of an armed force may be discharged before his term of service expires, except—(1) as prescribed by the Secretary concerned; (2) by sentence of a general or special court martial; or (3) as otherwise provided by law." 10 U.S.C. § 1169.

The Court of Military Appeals, in applying the terms of these two Congressional enactments, has stated:

We read these statutes as generally requiring that three elements be satisfied to accomplish an early discharge. First, there must be a delivery of a valid discharge certificate.... Second, there must be a final accounting of pay made.... Third, appellant must undergo the "clearing" process required under appropriate service regulations to separate him from military service....

*United States v. King,* 27 M.J. 327, 329 (C.M.A.1989) (citations omitted). In this case, no evidence was offered indicating that the required accounting took place, and the Government's evidence, as provided by the cognizant Disbursing Officer, is

that no such accounting occurred. Consequently, we find that, as a minimum, the second of these three elements did not occur in this case.

Although we question whether the delivery of the discharge certificate under the circumstances of this case actually satisfies the first of these elements, it is not necessary for the resolution of the issue before us to decide that aspect of the petitioner's request. Likewise, we note that there are several unresolved aspects of the check-out process that draw in question whether the petitioner's commanding officer was making an informed decision to allow the petitioner to be discharged earlier than the stated date on his discharge certificate and the actual end of his obligated service. *See United States v. Howard,* 20 M.J. 353 (C.M.A.1985). Consequently, our decision, that court-martial jurisdiction over the petitioner was not terminated because no accounting of final pay had been made and no final pay was ready to be delivered to petitioner, should not be read to indicate that we necessarily consider the remaining elements to have been satisfied in this case.

The petition for extraordinary relief is denied. The record of trial is returned to the military judge.